IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2007

# STATE OF TENNESSEE V. VINCENT D. STEELE

**Appeal from the Circuit Court for Montgomery County**
**No. 40500246    Michael R. Jones,  Judge**

---

**No.  M2007-00420-CCA-R3-CD - Filed January 11, 2008**

---

The Defendant, Vincent D. Steele, was convicted of possession of more than .5 grams of cocaine with the intent to sell, a Class B felony, and sentenced as a Range II, multiple offender to thirteen years in the Department of Correction.  In this direct appeal, he presents a single issue for our consideration: whether the evidence presented at his trial was sufficient to establish that he had the intent to sell the cocaine that he possessed.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Roger E. Nell, District Public Defender, and Rebecca F. Stevens, Assistant District Public Defender, for the appellant, Vincent D. Steele.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John W. Carney, District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

### Factual Background
The Montgomery County Grand Jury returned a two-count indictment against the Defendant and his two co-defendants, Shatwan Henderson and his brother, Duane Henderson: (1) possession of over .5 grams of cocaine with the intent to sell; and (2) possession of over .5 grams of cocaine with the intent to deliver.  Subsequently, the Defendant and his co-defendants were jointly tried before a jury.

At the trial, Sergeant Michael Scott Thornton of the Clarksville Police Department testified that in the early morning on August 21, 2004, he was operating as the shift supervisor for the Patrol Division's midnight shift in downtown Clarksville. At approximately 3:00 a.m., Sergeant Thornton and other officers were engaged in a routine check of a late-night bar at the time the bar was closing. Sergeant Thornton explained why the police were present when the bar closed:

> Club Pier Lights is located on Riverside Drive, near the intersection of College Street. . . . Based on the number of shots fired calls, fight in progress calls, things of this nature, coupled with the fact that several hundred people attend the establishment when it is open, [Sergeant Thornton] had [his] officers in the area maintain a visual deterrence to any criminal activity that might occur.

At the time the officers first approached the Defendant, the Defendant and the two co-defendants were seated in a vehicle near the night club where they had been stopped by other officers. No traffic violations had been committed: The purpose of the stop was to execute an unrelated arrest warrant for co-defendant Duane Henderson, who officers observed riding in the backseat of the vehicle. Co-defendant Shatwan Henderson was seated in the front passenger seat; the Defendant was driving. Sergeant Thornton asked for permission to search the car, and the Defendant consented. Sergeant Thornton discovered a magnetic key holder inside the glove compartment that contained what he "believed to be a felony amount" of crack cocaine. Sergeant Thornton then searched the Defendant's person, and he had a "substantial amount" of currency in the two front pockets of his pants. At that time, the Defendant volunteered the explanation that he "had the money in order to purchase the car that he was driving."

Sergeant Thornton, who had previously worked as a Narcotics Investigator in the Major Crimes Unit, testified regarding the street value of crack cocaine. He stated that "a small rock, which will weigh about a tenth of a gram," is worth approximately ten dollars. Depending on availability, a gram of crack cocaine is worth approximately $100, an ounce is worth between $800 and $1,200, and a kilogram is worth between $18,000 and $21,000 dollars. Sergeant Thornton also explained that when crack cocaine is sold to the "ultimate user," it is usually in one-tenth of a gram units, or "rocks." He could not recall how many "rocks" of crack cocaine were inside the magnetic key holder, but he remembered being certain that "it was in excess of five-tenths of a gram, which [he] knew was a felony." On cross-examination, he agreed that based on this pricing structure, .9 grams of crack cocaine would be worth approximately ninety dollars.

Officer Daryl Pace, also of the Clarksville Police Department, testified that in August of 2004 he was working as a drug investigator with the Major Crimes Unit. After he was arrested, the Defendant was brought to Officer Pace's office. He counted the money found in the Defendant's possession, and it totaled $3,311. The currency was in small denominations—twenty, ten, five and one dollar bills that were "just stuffed in [the Defendant's] pockets." Officer Pace field-tested the substance inside the magnetic key holder, and he concluded that it contained cocaine. He then sent it to the Tennessee Bureau of Investigation for further analysis.

Glen J. Glenn, a Special Agent Forensic Scientist with the Tennessee Bureau of Investigation's Nashville Crime Laboratory, testified as an expert in forensic chemistry analysis. Glenn explained that he had analyzed the "rocks" found inside the magnetic key holder and confirmed that they totaled eight-tenths (0.8) of a gram of a cocaine-based substance. On cross-examination, Glenn agreed that, if crack cocaine was commonly ingested in one-tenth of a gram units, that the amount in the magnetic key holder comprised approximately eight "doses" of crack cocaine.

Annessa Verlean Cobb testified that she had previously dated the Defendant for over one year. She was the original owner of the white Cadillac automobile in which the Defendant was stopped by police. However, since April of 2003, the Defendant had assumed responsibility for the car, was driving it regularly, and was paying Cobb seventy dollars per week so that she could then make payments to the automobile finance company. According to Cobb, the Defendant was also contemplating purchasing another car the weekend that he was arrested, and at that time, he was working at "Don's Construction" framing a house.

Anthony Williams testified that sometime after the night of the arrests, he spoke with co-defendant Shatwan Henderson outside his motorcycle club's clubhouse. At that time, co-defendant Shatwan Henderson told Williams that the crack cocaine discovered inside the Defendant's vehicle belonged to him, and that "he was going to take the charge and he wasn't going to let [the Defendant] go out like that." Williams confirmed that he was "pretty close" friends with the Defendant and that when he was sixteen years old, he lived with the Defendant's family for a period of time.

Denise Latonya Henderson testified that she was present when the Defendant and his co-defendants were pulled over and arrested outside the night club on August 21, 2004. The Defendant told her that night that the crack cocaine belonged to co-defendant Shatwan Henderson. Additionally, co-defendant Shatwan Henderson, to whom she is not related, told her approximately one month after the incident that the crack cocaine belonged to him and that "he was going to take the charge" and that "he wasn't going to let his brother and his boy go down."

At the close of the State's case-in-chief, the trial court granted a directed verdict in favor of co-defendant Duane Henderson, and the charges against him were dismissed.

Co-defendant Shatwan Henderson testified that he had never spoken with Anthony Williams or Denise Henderson and that he never told either of them that the crack cocaine belonged to him. Further, co-defendant Shatwan Henderson testified that it did not belong to him.

The Defendant testified that he picked up the co-defendants on the evening that they were arrested and drove to the nightclub at approximately 1:00 a.m. When they arrived, co-defendant Shatwan Henderson asked the Defendant if he could "put a box in [his] glove box." The Defendant agreed, and co-defendant Shatwan Henderson then opened the glove compartment and put something

inside it before the three men went into the night club. The Defendant maintained that the crack cocaine did not belong to him.

The Defendant also testified that he had a large amount of cash on him the night that he was arrested because he was planning on purchasing a car he had test-driven earlier that day. He said that at the time of his arrest he was working in the construction business earning approximately $400 per week. Regarding his expenses, he stated that he paid $700 per month for his rent and utility bills in addition to child support payments that varied in amount depending on his children's needs.

Following deliberations, the jury convicted the defendant of one count of possession of over .5 grams of cocaine with the intent to sell.[1] After a sentencing hearing, the trial court sentenced him as a Range II, multiple offender to thirteen years in the Department of Correction. The Defendant's motion for a new trial was denied, and he filed a timely notice of appeal.

**Analysis**

On appeal, the Defendant presents one issue for our review: whether the evidence presented at his trial was sufficient to establish that he had the intent to sell the crack cocaine discovered in his possession. The Defendant contends that because the crack cocaine discovered in his possession was a "miniscule amount," and because an explanation was presented by two witnesses regarding the reason why he had over $3,000 dollars in his pants pockets, no rational trier of fact could properly find that he had the intent to sell. Additionally, he asserts that the jury's verdict is further compromised by the fact that the crack cocaine was all contained in one container, and no paraphernalia associated with drug dealing (scales, plastic bags, razor blades, cell phones, pagers, etc . . .) was discovered in his possession.

Tennessee Rule of Appellate Procedure 13(e) mandates that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at

---

[1] Co-defendant Shatwan Henderson was convicted of one count of facilitation of possession of cocaine with the intent to sell.

558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In order to be sufficient to support the Defendant's conviction in the present case, the evidence presented at trial had to establish beyond a reasonable doubt that the Defendant knowingly possessed .5 grams or more of crack cocaine with the intent to sell. See Tenn. Code Ann. § 39-17-417(a)(4), (c)(1). A specific mental state (such as intent to sell) is an element of almost all criminal offenses, and it is proven most often by circumstantial evidence. State v. Timmy Lee Hill, No. M2005-01126-CCA-R3-CD, 2006 WL 1374668, at * 6 (Tenn. Crim. App., Nashville, May 17, 2006) (citing Hall v. State, 490, S.W.2d 495, 496 (Tenn. 1973)). Usually, the trier of fact must determine whether the culpable mental state was present by drawing inferences from the circumstances under which a defendant is arrested, id., and there are numerous factual circumstances from which a jury may properly infer that a defendant had the intent to deliver the drugs found in his possession. See State v. Toney L. Conn, No. M2005-02899-CCA-R3-CD, 2006 WL 3498048, at *5 (Tenn. Crim. App., Nashville, Nov. 21, 2006) (setting out the factual scenarios surrounding a defendant's possession of cocaine in eight different cases where this Court found the evidence sufficient to prove intent).

Moreover, Tennessee Code Annotated section 39-17-419 specifically sets out that the requisite intent to sell can be properly inferred from the circumstances surrounding a defendant's arrest:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

The jury in the present case found that the Defendant had the intent to sell the crack cocaine found in his possession based on the evidence presented at trial. Viewed in a light most favorable to the State, see Carruthers, 35 S.W.3d at 558, the evidence presented established: (1) the Defendant

was arrested in a high crime area at 3:00 a.m.; (2) he possessed .8 grams of crack cocaine; (3) that amount constituted eight, ten-dollar "doses" of the drug and could therefore be sold for eighty dollars; (4) he had $3,311—all in small bills—in the two front-pockets of his pants; and (5) searches of the Defendant's car and person did not yield the discovery of any apparatus with which the crack cocaine could have been smoked or otherwise ingested.

We conclude that this evidence, and the reasonable inferences it allows, adequately support the jury's conclusion that the Defendant possessed the crack cocaine with the intent to sell it. See, Conn, 2006 WL 3498048, at *5–6 (Tenn. Crim. App., Nashville, Nov. 21, 2006) (defendant's possession of a single plastic bag containing twenty-seven grams of cocaine, a small amount of marijuana, rolling papers, four hundred and eighty-one dollars in various denominations, a loaded weapon and two cellular telephones constituted sufficient evidence to support inference of intent to sell or deliver); State v. William Martin Frey, Jr., M2003-01996-CCA-R3CD, 2004 WL 2266799, at *8 (Tenn. Crim. App., Nashville, Oct. 6, 2004) (holding that the evidence was sufficient to sustain the defendant's conviction for possession of cocaine with the intent to deliver where the defendant threw 1.8 grams of cocaine out his vehicle's window while he was being pulled over, and there was a "stack of cash" inside the vehicle, but no paraphernalia associated with the use of crack cocaine); State v. Muhammed Nuridden, No E2003-00996-CCA-MR3-CD, 2004 WL 840079, at *12 (Tenn. Crim. App., Knoxville, April 20, 2004) (concluding that possession of 3.6 grams of crack cocaine and $526 primarily in ten and twenty dollar bills, together with testimony regarding how crack cocaine is normally sold and the fact that the defendant did not appear to be under the influence and had no paraphernalia to consume the drug was sufficient to support his conviction for possession with intent to sell or deliver despite reversing that conviction on other grounds).

The amount of crack cocaine the Defendant possessed (.8 grams) is more than sufficient to satisfy the statutory provision under which he was convicted, see Tenn. Code Ann. § 39-17-417(c)(1) (requiring that the amount of substance containing cocaine weigh "point five (.5) grams or more"), and the attendant circumstances of his arrest support the inference that he possessed it with the intent to sell.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE